READING CO. *v.* BROWN, TRUSTEE IN
BANKRUPTCY, ET AL.

No. 127.   Argued March 4–5, 1968.—Decided June 3, 1968.

472

*Thomas Raeburn White, Jr.,* argued the cause for petitioner. With him on the briefs was *H. Merle Mulloy.*

*Owen B. Rhoads* argued the cause for respondent Brown. With him on the brief were *Samuel Marx* and *Arthur E. Newbold III.*

*Richard M. Roberts* argued the cause for the United States. On the brief were *Solicitor General Griswold, Assistant Attorney General Rogovin, Harris Weinstein, Crombie J. D. Garrett,* and *Edward Lee Rogers.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

On November 16, 1962, I. J. Knight Realty Corporation filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U. S. C. §§ 701–799. The same day, the District Court appointed a receiver, Francis Shunk Brown, a respondent here. The receiver was authorized to conduct the debtor's business, which consisted principally of leasing the debtor's only significant asset, an eight-story industrial structure located in Philadelphia.

On January 1, 1963, the building was totally destroyed by a fire which spread to adjoining premises and destroyed real and personal property of petitioner Reading Company and others. On April 3, 1963, petitioner filed a claim for $559,730.83 in the arrangement, based on the asserted negligence of the receiver. It was styled a claim for "administrative expenses" of the arrangement. Other fire loss claimants filed 146 additional claims of a similar nature. The total of all such claims was in excess of $3,500,000, substantially more than the total assets of the debtor.

On May 14, 1963, Knight Realty was voluntarily adjudicated a bankrupt and respondent receiver was subsequently elected trustee in bankruptcy. The claims of petitioner and others thus became claims for administra-

tion expenses in bankruptcy which are given first priority under § 64a (1) of the Bankruptcy Act, 11 U. S. C. § 104 (a)(1).[1] The trustee moved to expunge the claims on the ground that they were not for expenses of administration. It was agreed that the decision whether petitioner's claim is provable as an expense of administration would establish the status of the other 146 claims. It was further agreed that, for purposes of deciding whether the claim is provable, it would be assumed that the damage to petitioner's property resulted from the negligence of the receiver and a workman he employed.[2] The United States, holding a claim for unpaid prearrangement taxes admittedly superior to the claims of general creditors and inferior to claims for administration expenses, entered the case on the side of the trustee.

The referee disallowed the claim for administration expenses. He also ruled that petitioner's claim was not provable as a general claim against the estate, a ruling challenged by neither side.[3] On petition for review, the

---

[1] Section 302 of the Act, as set forth in 11 U. S. C. § 702, provides in part as follows:

"The provisions of chapters 1–7 of this title shall, insofar as they are not inconsistent with or in conflict with the provisions of this chapter [XI], apply in proceedings under this chapter."

Section 64a (1), a part of Chapter VII and hence applicable to Chapter XI arrangements by virtue of § 302, itself provides that where, as here, ordinary bankruptcy ensues upon a proceeding under another chapter,

"the costs and expenses of administration incurred in the ensuing bankruptcy proceeding shall have priority in advance of payment of the unpaid costs and expenses of administration . . . incurred in the superseded proceeding . . . ."

We deal here, therefore, with a claim that will in any event be subordinate to administration expenses of the bankruptcy proper.

[2] Thus the merits of negligence claims have not been adjudicated, and, of course, we intimate no views upon them.

[3] See *infra,* at 480.

referee was upheld by the District Court. On appeal, the Court of Appeals for the Third Circuit, sitting *en banc,* affirmed the decision of the District Court by a 4–3 vote. We granted certiorari, 389 U. S. 895, because the issue is important in the administration of the bankruptcy laws and is one of first impression in this Court. For reasons to follow, we reverse.

Section .64a of the Bankruptcy Act provides in part as follows:

> "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition . . . ."

It is agreed that this section, applicable by its terms to straight bankruptcies, governs payment of administration expenses of Chapter XI arrangements. Furthermore, it is agreed that for the purpose of applying this section to arrangements, the words "subsequent to filing the petition" refer to the period subsequent to the *arrangement* petition,[4] and the words "preserving the estate" include the larger objective, common to arrangements, of operating the debtor's business with a view to rehabilitating it.[5]

---

[4] This is explicitly provided in § 302.

[5] Compare 3 Collier, Bankruptcy ¶ 62.15:

"Section 2a (5) empowers the court to authorize the business of bankrupts to be conducted for a limited period by a marshal, receiver or trustee. Such continued operation of a business is in substance a means of preservation, namely as a going concern, sometimes with a view to rehabilitation . . . . Expenditure incurred by continued operation of a bankrupt's business will, therefore, on principle, follow the rules . . . as to expenditure in connection

The question in this case is whether the negligence of a receiver administering an estate under a Chapter XI arrangement gives rise to an "actual and necessary" cost of operating the debtor's business. The Act does not define "actual and necessary," nor has any case directly in point been brought to our attention.[6] We must, therefore, look to the general purposes of § 64a, Chapter XI, and the Bankruptcy Act as a whole.

The trustee contends that the relevant statutory objectives are (1) to facilitate rehabilitation of insolvent businesses and (2) to preserve a maximum of assets for

---

with preservation. The difference, if any, lies in the greater variety of types of expenses . . . ." (Footnotes omitted.)

[6] The case that petitioner finds most closely in point is *Vass* v. *Conron Bros.*, 59 F. 2d 969. Vass was the receiver of certain bankrupts who had been dealers in cold meats and had leased space in their cold storage plant to Conron. Vass confirmed the lease, one of whose covenants provided that the lessor would maintain sufficient refrigeration; thereafter, Vass allegedly failed to refrigerate properly, damaging stored property of the lessee. The lessee then attempted to sue Vass in a state court, alleging breach of the covenant and negligence. Vass, however, obtained an injunction from the bankruptcy court against the state action; the Court of Appeals affirmed in an opinion by L. Hand.

The issue in *Vass* was whether the state action would conflict with the bankruptcy court's jurisdiction over the estate. In ruling that the action could not be maintained, Judge Hand concluded, *inter alia*, that the action did *not* fall within the federal statutory permission for actions based on any liability arising out of "any act or transaction" of the trustee "in carrying on the business connected with" the property entrusted to him. Judge Hand concluded, on special facts, that the trustee in confirming the lease was merely holding matters *in statu quo*, not continuing the business. Consequently, he said that "the liquidation of the lessee's resulting damages was as much a part of the usual administration in bankruptcy, as that of the pay of accountants, custodians or other assistants." 59 F. 2d, at 971. In context, the language just quoted is of little assistance in the present case.

distribution among the general creditors should the arrangement fail. He therefore argues that first priority as "necessary" expenses should be given only to those expenditures without which the insolvent business could not be carried on. For example, the trustee would allow first priority to contracts entered into by the receiver because suppliers, employees, landlords, and the like would not enter into dealings with a debtor in possession or a receiver of an insolvent business unless priority is allowed. The trustee would exclude all negligence claims, on the theory that first priority for them is not necessary to encourage third parties to deal with an insolvent business, that first priority would reduce the amount available for the general creditors, and that first priority would discourage general creditors from accepting arrangements.

In our view the trustee has overlooked one important, and here decisive, statutory objective: fairness to all persons having claims against an insolvent. Petitioner suffered grave financial injury from what is here agreed to have been the negligence of the receiver and a workman. It is conceded that, in principle, petitioner has a right to recover for that injury from their "employer," the business under arrangement, upon the rule of *respondeat superior*.[7] Respondents contend, however, that

---

[7] 28 U. S. C. § 959 (b) provides as follows:

"A trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

This provision of course establishes only the principle of liability under state tort and agency law, and does not decide from whom

petitioner is in no different position from anyone else injured by a person with scant assets: its right to recover exists in theory but is not enforceable in practice.

That, however, is not an adequate description of petitioner's position. At the moment when an arrangement is sought, the debtor is insolvent. Its existing creditors hope that by partial or complete postponement of their claims they will, through successful rehabilitation, eventually recover from the debtor either in full or in larger proportion than they would in immediate bankruptcy. Hence the present petitioner did not merely suffer injury at the hands of an insolvent business: it had an insolvent business thrust upon it by operation of law. That business will, in any event, be unable to pay its fire debts in full. But the question is whether the fire claimants should be subordinated to, should share equally with, or should collect ahead of those creditors for whose benefit the continued operation of the business (which unfortunately led to a fire instead of the hoped-for rehabilitation) was allowed.

---

or with what priority tort claims may be collected. In *McNulta* v. *Lochridge,* 141 U. S. 327, 332, this Court had occasion to note that "[a]ctions against the receiver are in law actions against the receivership, or the funds in the hands of the receiver, and his contracts, misfeasances, negligences and liabilities are official and not personal, and judgments against him as receiver are payable only from the funds in his hands."

This statement of course means only that torts of a receiver are in principle compensable out of the assets of the estate in receivership and, again, does not indicate whether such claims shall be paid prior to, equally with, or after other claims against the receivership.

We do not here reach, and do not mean to reaffirm the implication of *McNulta* that an action against the receiver personally, or against the debtor after termination of the receivership, would never lie under any circumstances. As to such questions, the statement of *McNulta* is dictum.

Recognizing that petitioner ought to have some means of asserting its claim against the business whose operation resulted in the fire, respondents have suggested various theories as alternatives to "administration expense" treatment. None of these has case support, and all seem to us unsatisfactory.

Several need not be pursued in detail. The trustee contends that if the present claims are not provable in bankruptcy they would survive as claims against the shell. He also suggests that petitioner may be able to recover from the receiver personally, or out of such bond as he posted. Without deciding whether these possible avenues are indeed open,[8] we merely note that they do not serve the present purpose. The "master," liable for the negligence of the "servant" in this case was the business operating under a Chapter XI arrangement for the benefit of creditors and with the hope of rehabilitation. That benefit and that rehabilitation are worthy objectives. But it would be inconsistent both with the principle of *respondeat superior* and with the rule of fairness in bankruptcy to seek these objectives at the cost of excluding tort creditors of the arrangement from its assets, or totally subordinating the claims of those on whom the arrangement is imposed to the claims of those for whose benefit it is instituted.

The United States, as a respondent, suggests instead that tort claims arising during an arrangement are, if properly preserved, provable general claims in any subsequent bankruptcy under § 63a of the Act, 11 U. S. C. § 103 (a). That section reads as follows:

> "Debts of the bankrupt may be proved and allowed against his estate which are founded upon . . . (7) the right to recover damages in any action for

---

[8] See n. 7, *supra*.

negligence instituted prior to and pending at the time of the filing of the petition in bankruptcy . . . ."

It is agreed by all parties that this section will not avail the present petitioner who, it appears, did not file suit on its claim prior to the bankruptcy proper. This, the United States argues, is its own fault: it could have filed suit after the tort, during the arrangement, and before the petition in bankruptcy, and thus preserved its claim.

This was not the view of the District Court. Section 302 of the Act, the section which provides that Chapters I to VII of the Act (including §§ 63 and 64) shall be applicable to arrangements under Chapter XI as well as straight bankruptcies, contains the following provision:

"For the purposes of such application the date of the filing of the petition in bankruptcy shall be taken to be the date of the filing of an original petition under section 722 of this title [§ 322 of the Act, 11 U. S. C. § 722, which provides for filing original petitions for arrangements] . . . ."

Section 378 (2) of the Act, 11 U. S. C. § 778 (2), dealing with procedure when bankruptcy ensues upon an arrangement, provides that

"in the case of a petition filed under section 722 of this title, the proceeding shall be conducted, so far as possible, in the same manner and with like effect as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered on the day when the petition under this chapter [i. e., the petition for an arrangement] was filed . . . ."

The effect of these two sections is that, whether or not an arrangement is superseded by bankruptcy, for purposes of applying § 63 to arrangements the date of the arrangement petition is deemed to be the date of a petition in bankruptcy.

From this fact, the District Court concluded, and petitioner now argues, that a person negligently injured during the course of an arrangement could never have a provable general claim under § 63a. For that section requires that suit be filed before the filing of the petition in bankruptcy, and, when the section is applied to an arrangement, the date of the filing of the petition in bankruptcy is deemed to be the date of the filing of the arrangement petition.

In response, the United States notes that § 378 (2) is qualified by the words "so far as possible." The Government therefore suggests a holding that it is not "possible" to treat the date of the arrangement petition as the critical date in a case such as the present, because that point in time antedates the tort. On that theory, it is suggested that, for present purposes, § 63a's reference to the date of filing the bankruptcy petition be taken to refer to the date of the petition in bankruptcy proper.

We do not find this an acceptable alternative. The only thing that renders it not "possible" to follow the statutory scheme and meld the arrangement into the bankruptcy is the Government's insistence that petitioner's claim must be held to have been provable under § 63a if only petitioner had taken the proper steps. There is nothing "impossible" about construing the sections here involved to mean what they say: a tort claim arising during an arrangement, like a tort claim arising during a bankruptcy proceeding proper, is not provable as a general claim in the bankruptcy.

There are additional reasons for reading the sections literally in this case. In the first place, the United States' suggestion will not work where bankruptcy does not ensue upon the arrangement, for then there is no later date that can be used as the cutoff for 63a (7) claims. In that case, it would be necessary either to hold that a tort claim arising during an arrangement is a prov-

able general claim if bankruptcy ensues but is not a provable general claim in the arrangement itself, or to hold that there is no time limit on filing suit so long as the arrangement remains an arrangement. Nothing in the qualifying language of § 378 (2) grants permission to read the time limitation out of § 63a (7) of the Act.

An even greater difficulty is presented by the fact that § 63a refers to provable debts of the *bankrupt,* and distinguishes the bankrupt from his *estate.* Section 302 provides that in applying § 63a to arrangements, the word "bankrupts" shall be deemed to relate also to "debtors." Thus the natural reading of § 63a, when applied to arrangements as if they were bankruptcies, is that in order to be provable under § 63a (7) a tort claim must be a claim against the debtor and not against the estate in a Chapter XI arrangement. Respondents might argue this question as they do the time limitation: that it would be preferable to deem the words "debts of the bankrupt" to mean "debts of the debtor or of his estate arising up to the time of bankruptcy proper." This argument is open, however, to the same objections as the argument on time limitations: it is a strained reading of the statute which makes no allowance for the occasions when straight bankruptcy does not ensue.

In any event, we see no reason to indulge in a strained construction of the relevant provisions, for we are persuaded that it is theoretically sounder, as well as linguistically more comfortable, to treat tort claims arising during an arrangement as actual and necessary expenses of the arrangement rather than debts of the bankrupt. In the first place, in considering whether those injured by the operation of the business during an arrangement should share equally with, or recover ahead of, those for whose benefit the business is carried on, the latter seems more natural and just. Existing creditors are, to

be sure, in a dilemma not of their own making, but there is no obvious reason why they should be allowed to attempt to escape that dilemma at the risk of imposing it on others equally innocent.

More directly in point is the possibility of insurance. An arrangement may provide for suitable coverage, and the court below recognized that the cost of insurance against tort claims arising during an arrangement is an administrative expense payable in full under § 64a (1) before dividends to general creditors.[9] It is of course obvious that proper insurance premiums must be given priority, else insurance could not be obtained; and if a receiver or debtor in possession is to be encouraged to obtain insurance in adequate amounts, the claims against which insurance is obtained should be potentially payable in full. In the present case, it is argued, the fire was of such incredible magnitude that adequate insurance probably could not have been obtained and in any event would have been foolish; this may be true, as it is also true that allowance of a first priority to the fire claimants here will still only mean recovery by them of a fraction of their damages. In the usual case where damages are within insurable limits, however, the rule of full recovery for torts is demonstrably sounder.

Although there appear to be no cases dealing with tort claims arising during Chapter XI proceedings, decisions in analogous cases suggest that "actual and necessary costs" should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible. It has long been the rule of equity receiverships that torts of the receivership create claims against the receivership itself;[10] in those cases the statutory limitation to "actual

---

[9] 370 F. 2d 624, 628.

[10] E. g., Texas & Pacific R. Co. v. Bloom, 164 U. S. 636; Bereth v. Sparks, 51 F. 2d 441; § 77 (n), 11 U. S. C. § 205 (n), according

and necessary costs" is not involved, but the explicit recognition extended to tort claims in those cases weighs heavily in favor of considering them within the general category of costs and expenses.

In some cases arising under Chapter XI it has been recognized that "actual and necessary costs" are not limited to those claims which the business must be able to pay in full if it is to be able to deal at all. For example, state and federal taxes accruing during a receivership have been held to be actual and necessary costs of an arrangement.[11] The United States, recognizing and supporting these holdings, agrees with petitioner that costs that form "an integral and essential element of the continuation of the business" are necessary expenses even though priority is not necessary *to* the continuation of the business. Thus the Government suggests that "an injury to a member of the public—a business invitee—who was injured while on the business premises during an arrangement would present a completely different problem [*i. e.,* could qualify for first priority]" although it is not suggested

particular recognition to the tort claims of railroad employees, does not, as the dissent suggests, mean that other tort claims are not chargeable against a receivership itself. Rather, as the United States concedes, "tort claims arising during a receivership or reorganization period . . . have generally been given the priority status of general administrative expenses."

[11] *E. g., Nicholas* v. *United States,* 384 U. S. 678. At pages 687–688 we stated:

"Taxes incurred in the pre-arrangement period must be content with a fourth priority under § 64a (4) of the Bankruptcy Act. On the other hand, taxes incurred during the arrangement period are expenses of Chapter XI proceedings and are therefore technically a part of the first priority under § 64a (1)."

The Court also ruled that interest accruing on such claims during the arrangement period would also fall within § 64a (1). *Ibid.* See also *Boteler* v. *Ingels,* 308 U. S. 57.

that priority is needed to encourage invitees to enter the premises.

The United States argues, however, that each tort claim "must be analyzed in its own context." Apart from the fact that it has been assumed throughout this case that all 147 claimants were on an equal footing and it is not very helpful to suggest here for the first time a rule by which lessees, invitees, and neighbors have different rights, we perceive no distinction: No principle of tort law of which we are aware offers guidance for distinguishing, within the class of torts committed by receivers while acting in furtherance of the business, between those "integral" to the business and those that are not.[12]

We hold that damages resulting from the negligence of a receiver acting within the scope of his authority as receiver give rise to "actual and necessary costs" of a Chapter XI arrangement.

The judgment of the Court of Appeals is reversed, and the case remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE DOUGLAS joins, dissenting.

In my opinion, the Court has misinterpreted the term "costs and expenses of administration" as intended by

---

[12] Compare 3 Collier, Bankruptcy ¶ 62.15:

"Among other expenses incident to conducting a business and therefore allowable as administrative expenditure may be . . . payments on claims for personal injuries inflicted in the operation of a business, rent, insurance, commissions, cost of raw material or merchandise purchased for manufacturing or resale and any other expense ordinarily attendant upon active participation in commercial or industrial life." (Footnotes omitted.)

§ 64a (1) of the Bankruptcy Act and, by deviating from the natural meaning of those words, has given the administrative cost priority an unwarranted application. The effect of the holding in this case is that the negligence of a workman may completely wipe out the claims of all other classes of public and private creditors. I do not believe Congress intended to accord tort claimants such a preference. Accordingly, I would affirm the judgment below.

On other occasions, this Court has observed that "[t]he theme of the Bankruptcy Act is 'equality of distribution' . . . ; and if one claimant is to be preferred over others, the purpose should be clear from the statute." *Nathanson* v. *NLRB,* 344 U. S. 25, 29 (1952); see *Sampsell* v. *Imperial Paper Corp.,* 313 U. S. 215, 219 (1941). More particularly, the Act expressly directs that eligible negligence claims are to share *equally* with the unsecured claims in a pro rata distribution of the debtor's nonexempt assets. Bankruptcy Act §§ 63a (7), 65a, 11 U. S. C. §§ 103 (a)(7), 105 (a). Departing from this statutory scheme, the Court today singles out one class of tort claims for special treatment. After today's decision, the status of a tort claimant depends entirely upon whether he is fortunate enough to have been injured after rather than before a receiver has been appointed. And if the claimant is in the select class, he may be permitted to exhaust the estate to the exclusion of the general creditors as well as of the wage claims and government tax claims for which Congress has shown an unmistakable preference.[1] In my view, this result frustrates rather

---

[1] Certain wage claims and government taxes obtain second and fourth priorities respectively under the second and fourth subdivisions of § 64a, 11 U. S. C. §§ 104 (a)(2), 104 (a)(4). The government tax claims in this case, nearly all of which will be excluded from sharing in the estate under today's decision, amount to approximately $245,000.

than serves the underlying purposes of a Chapter XI proceeding, and I would not reach it without a clear indication that Congress so intended.

Congress enacted Chapter XI as an alternative to straight bankruptcy for individuals and small businesses which might be successfully rehabilitated instead of being subjected to economically wasteful liquidation. The success of a Chapter XI proceeding depends largely on two factors: first, whether creditors will take the chance of permitting an arrangement; second, whether other businesses will continue to deal with the distressed business. With respect to the first of these considerations, today's decision will undoubtedly discourage creditors from permitting arrangements, because it subjects them to unpredictable and probably uninsurable tort liability. I do not believe the statutory language requires such an interpretation. I would construe § 64a (1) with reference to the second consideration mentioned above. In my opinion, the Court would reach a result more in line with congressional intent and the Bankruptcy Act generally by regarding as administrative costs only those costs required for a smooth and successful arrangement. Accordingly, the administrative cost priority should be viewed as a guaranty to the receiver and those who deal with or are employed by him that they will be paid for their goods and services. Any broader interpretation will discourage creditors from permitting use of the rehabilitative machinery of Chapter XI and tend to force distressed businesses into straight bankruptcy.

It is equitable, the Court believes, that the general creditors (and wage and tax claimants) bear the loss in this case because they have "thrust" an insolvent business upon petitioner for their own benefit. I respectfully submit that this is a most unfair characterization of arrangements. An economically distressed businessman seeks an arrangement for his own and not for his cred-

itors' benefit.[2]   Of course the creditors will benefit if the arrangement is successful, just as they would have benefited if the businessman had been successful without resorting to an arrangement.   But a business in arrangement is no more thrust on the public than is any other business enterprise which is conducted for the mutual prosperity of the owners, the wage earners and the creditors.   Realistically, the only difference is that a business administered under Chapter XI has not been prosperous. If the arrangement is successful, the owners, wage earners and creditors will all benefit; if it is not, they will all be injured.   Thus, I would not distinguish in this case between petitioner and the other general creditors, none of whom was responsible for the catastrophe for which all of them must sustain some loss.   Instead, in deciding this case, I would adhere to the Act's basic theme of equality of distribution.

The Court states that its decision will encourage Chapter XI receivers to obtain "adequate" insurance.   The Court fairly well concedes, however, that in this case "adequate" insurance "probably could not have been obtained and in any event would have been foolish." In other words, so far as this Court knows, the insurance taken out by the receiver in this case was in fact "adequate," in the sense that no reasonable receiver could or should obtain fire insurance in the amount of $3,500,000 on the assumption that his workman might accidentally cause a fire of the proportions which occurred here.   Moreover, quite apart from the case at bar, there is absolutely no indication that today's decision is needed to encourage receivers to obtain insurance.[3]   I see no

---

[2] Unlike straight bankruptcy, only the debtor himself may file a petition for an arrangement under Chapter XI.   Bankruptcy Act §§ 321, 322, 11 U. S. C. §§ 721, 722; 8 Collier, Bankruptcy ¶ 4.02 [1].

[3] In fact, the absence of any other adjudicated case on the question here presented is a strong indication that the receiver's insurance is usually perfectly adequate.

basis in the Act or in sound policy for a ruling that the creditors of an estate under a Chapter XI arrangement become involuntary insurers against a liability which probably would not and should not be insurable by more traditional means.

The Court also relies, in my opinion mistakenly, upon analogies to equity receiverships. In reorganizations under Chapter X [4] and § 77,[5] Congress has directed the courts to apply the rules of priority developed in equity.[6] However, arrangements under Chapter XI are governed strictly by the statutory priorities fixed by § 64a. These statutory priorities differ in many respects from those applicable to equity receiverships,[7] and they have been amended repeatedly to narrow the class of claimants which may participate ahead of the general creditors.[8] Furthermore, even in the case of § 77 reorganizations where the priorities developed in equity are controlling, Congress has specifically provided for one exception to the rule that tort claimants are to be treated as general creditors. Bankruptcy Act § 77 (n), 11 U. S. C. § 205 (n).

---

[4] 11 U. S. C. §§ 501–676.

[5] 11 U. S. C. § 205.

[6] Bankruptcy Act §§ 77b, 115, 11 U. S. C. §§ 205 (b), 515; see In re Chicago Express, Inc., 332 F. 2d 276, 278 (C. A. 2d Cir. 1964). Section 102 of the Act (11 U. S. C. § 502), which is applicable to corporate reorganizations, specifically provides that § 64 "shall not apply in such proceedings unless an order shall be entered directing that bankruptcy be proceeded with . . . ."

[7] To take but two examples, government tax claims obtain a higher priority in equity receiverships and under Chapter X than they do under § 64a, see Bankruptcy Act § 199, 11 U. S. C. § 599; 6A Collier, Bankruptcy ¶ 9.13 [2]; and the "six-months rule" applied to equity receiverships has no analogue under § 64a. See Dudley v. Mealey, 147 F. 2d 268 (C. A. 2d Cir. 1945).

[8] E. g., compare Act of July 1, 1898, c. 541, § 64a, 30 Stat. 563, with Act of May 27, 1926, c. 406, § 15 [64a], 44 Stat. 666; compare 80 Stat. 270, 11 U. S. C. §§ 35, 104 (a) (4) (1964 ed., Supp. II), with Act of June 22, 1938, c. 575, amending §§ 17a (1), 64a (4), 52 Stat. 851, 874.

That exception is in favor of a narrowly defined class of claimants. Congress has not expressly provided a similar exception to cover petitioner's tort claim, and I would not infer one.

Finally, the Court concludes, for two reasons, that it is "linguistically more comfortable" to treat petitioner's claim as an administrative cost rather than as a negligence claim which could have been proven under § 63a (7). First, § 63a refers to provable claims against the debtor and not against his estate. Second, §§ 63a (7) and 302 require that an action be commenced on the claim before the filing of the arrangement petition, and allowing claims like petitioner's would in effect toll the time limitation imposed by these sections. With respect to the first of the Court's reasons, I find no statutory or practical basis for distinguishing between the debtor and his estate in this case. Had the arrangement been successful, the debtor would have been liable for any damages occasioned during the administration under the line of cases relied upon by the Court. *Texas & Pacific R. Co.* v. *Bloom,* 164 U. S. 636 (1897). The suggested distinction between "debtor" and "estate" would be meaningful only if the two words pointed to different sources of liability. Here, petitioner's negligence claim, if allowed, would diminish the debtor's estate irrespective of whether it were treated as an administrative cost under § 64a or as an ordinary negligence claim under § 63a (7). With respect to the Court's second argument, Chapter XI provides that the straight bankruptcy provisions, including § 63a (7), are applicable to arrangement proceedings only "so far as possible." Bankruptcy Act § 378 (2), 11 U. S. C. § 778 (2). I have no difficulty in concluding that, where the claim does not arise until after the arrangement petition is filed, it is manifestly impossible for a lawsuit on that claim to precede the filing of the petition. Further, I know

of no more complete way to "read the time limitation out of § 63a (7) of the Act" than by treating certain negligence claims as administrative costs as the Court does in this case.

I see no basis in equity or in the statutory language or purpose for subjecting every class of creditors except petitioner's to a loss caused by the negligence of a workman. Consequently, I would construe "actual and necessary costs" as limited to those costs actually and necessarily incurred in preserving the debtor's estate and administering it for the benefit of the creditors. I would not include ordinary negligence claims within this class.