In re ELKINS ENERGY CORPORATION, Debtor.

Harrison COMBS, et al., Plaintiffs,

v.

ELKINS ENERGY CORPORATION, Defendant.

Bankruptcy No. 79–00063–B.

Complaint No. 16.

United States Bankruptcy Court,
W.D. Virginia,
Big Stone Gap Division.

Sept. 18, 1984.

Robert T. Copeland, Abingdon, Va., and James E. Nunley, Bristol, Va., for debtor.

James W. Elliott, Jr., Bristol, Va., Chapter IV Trustee.

Stuart B. Campbell, Jr., Wytheville, Va., for plaintiffs.

William F. Hanrahan, and Walter ·P. O'Connell, UMWA Health & Retirement Funds, Washington, D.C.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

Trustees of the United Mine Workers of America Health and Retirement Fund ("Fund"), on March 5, 1982 filed a complaint in this court against the Debtor and Trustee seeking allowance of a priority administrative claim of funds due the Fund under the National Bituminous Coal Wage Agreement of 1978 and 1981.

The essential facts are not disputed. In 1979, Elkins Energy Corporation, a large coal mining company in Dickenson County, Virginia, filed its Chapter XI petition in this court seeking a reorganization of its coal mining business. During the pendency of the Chapter XI case, in which the Debtor operated as a "Debtor-in-Possession", the Debtor's employees performed services in the mining operation under said Contract, which provided payments by the Debtor to the Fund for the amount sued for and remaining unpaid. Thereafter, James W. Elliott, Jr. was appointed Trustee following the conversion of the Chapter XI to a Chapter IV liquidation case.

The Trustee contends that the claim representing the funds due the Fund and unpaid do not constitute a priority administrative expense pursuant to Section 64, [11 U.S.C. § 104(a)(1) ], Bankruptcy Act of 1898, as amended.

Section 64 of the Act provides:

"§ 64. **Debts Which Have Priority.** a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; the fees for the referee's salary and expense fund; the filing fees paid by creditors in involuntary cases or by persons other than the bankrupts in voluntary cases; where property of the bankrupt, transferred or concealed by him either before or after the filing of the petition, is recovered for the benefit of the estate of the bankrupt by the efforts and at the cost and expense of one or more creditors, the reasonable costs and expenses of the recovery; the trustee's expenses in opposing the bankrupt's discharge or in connection with the criminal prosecution of an offense punishable under chapter 9 of title 18 of the United States Code, or an offense concerning the business or property of the bankrupt punishable under other laws, Federal or State; the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irre-

spective of the number of attorneys employed, to the bankrupt in voluntary and involuntary cases, and to the petitioning creditors in involuntary cases, and if the court adjudges the debtor bankrupt over the debtor's objection or pursuant to a voluntary petition filed by the debtor during the pendency of an involuntary proceeding, for the reasonable costs and expenses incurred, or the reasonable disbursements made, by them, including but not limited to compensation of accountants and appraisers employed by them, in such amount as the court may allow. *Where an order is entered in a proceeding under any chapter of this Act directing that bankruptcy be proceeded with, the costs and expenses of administration incurred in the ensuing bankruptcy proceeding, including expenses necessarily incurred by a debtor in possession, receiver, or trustee in preparing the schedule and statement required to be filed by sections 238, 378, or 483, shall have priority in advance of payment of the unpaid costs and expenses of administration, including the allowances provided for in such chapter,* incurred in the superseded proceeding and in the suspended bankruptcy proceeding, if any; ... " (Emphasis added)

The audit of the Debtor's records during the pertinent times in question reflects a basic sum due the trust of $15,991.67, representing said sum less interest. This amount apparently is not disputed by the parties. The position of the Trustee appears to be that the claim of the Fund is not accorded the priority of a "wage claim". However, the claimed expense of the Fund is that of an administrative expense necessarily incurred during the operation of the Debtor's Chapter XI case in its efforts to rehabilitate its financial affairs.

The court, having maturely reviewed the memoranda of counsel and the facts, concludes that said sum represents a priority administrative expense under 11 U.S.C. § 104.

The case of *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), is in point. Here, the court was dealing with a fire loss incurred by a third party during the operation of a Chapter XI arrangement proceeding, later converted. In holding that the tort claim was a priority administrative expense, the court stated as follows, at page 475, 88 S.Ct. at page 1762:

"It is agreed that this section, applicable by its terms to straight bankruptcies, governs payment of administration expenses of Chapter XI arrangements. Furthermore, it is agreed that for the purpose of applying this section to arrangements, the words 'subsequent to filing the petition' refer to the period subsequent to the *arrangement* petition, and the words 'preserving the estate' include the larger objective, common to arrangements, of operating the debtor's business with a view to rehabilitating it.

"The question in this case is whether the negligence of a receiver administering an estate under a Chapter XI arrangement gives rise to an 'actual and necessary' cost of operating the debtor's business. The Act does not define 'actual and necessary', nor has any case directly in point been brought to our attention. We must, therefore, look to the general purposes of § 64a, Chapter XI, and the Bankruptcy Act as a whole."

The court thereafter concluded that the fire loss claim was, in fact, an expense actually and necessarily incurred.

In 3A *Collier on Bankruptcy,* 14th Ed., § 64.05[1.2], the treatise comments on § 64a(1) that the 1938 Act revising the priority section grouped all the items making up costs and expenses of administration into one sub-heading, the first priority stating as follows:

"The phrase 'costs and expenses of administration' includes all the items in 64a(1), but is not limited to them."

Again, the same author, at § 64.105[2], recites:

"... No attempt is made in the Bankruptcy Act to enumerate specifically all

the items of expense to which first priority is given as costs of administration.

"The actual costs and expenses incurred by officers ... in the administration of estates, to be paid or allowed under § 62a undoubtedly are given priority of payment by § 64a(1)."

The same treatise lists under the Section instances where claims were allowed covering a wide range of liabilities which debtors incur during the operation of an ongoing Chapter XI case. These items included royalties for coal mined, employees' wages, as well as claims of employees for severance and vacation pay pursuant to a Union contract, citing *In re Public Ledger, Inc.*, 161 F.2d 762 (3rd Cir.1947).

It is noted that the court in *Reading, supra,* used broad language in its decision as to actual and necessary expenses. Here, the royalties due the Fund were voluntarily incurred by the Debtor as the employees performed work pursuant to the UMWA Contract. In *Reading, supra,* the liability held as an actual and necessary expense by the Supreme Court was an involuntary or nonconsensual liability arising by virtue of a fire loss due to negligence. It would be novel, indeed, if the royalties due the Fund in this case agreed upon by the Debtor should be held as not an actual and necessary expense when a tort liability incurred would be so determined.

As set forth by the Supreme Court in *Reading, supra,* the debt incurred herein was necessarily incurred under the Union Contract with the Debtor, non-compliance with which would have closed down the Debtor's operation and its efforts at rehabilitation. It, therefore, was an essential debt necessarily incurred by the Debtor and comes within § 104.

Accordingly, an Order will be entered allowing the claim in the amount of $15,-991.67 as a priority administrative expense, to be disbursed in accordance with future Orders of this court along with other priority expenses heretofore or as hereafter might be allowed.

Service of a copy of this Memorandum Opinion shall be made by mail to the Debtor, Debtor's Attorneys, Trustee, and to counsel for Plaintiffs.