**In re PIONEER ACCEPTANCE CORPORATION, Debtor.**

**ANDRES LUMBER AND SUPPLY COMPANY, Administrative Claimant,**

v.

**PIONEER ACCEPTANCE CORPORATION, Respondent.**

**Bankruptcy No. 1–88–03369.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Jan. 31, 1990.

---

Richard D. Nelson, Cincinnati, Ohio, for respondent.

John A. Schuh, Cincinnati, Ohio, for Andres.

Mark C. Bissinger, Trustee, Cincinnati, Ohio.

Susan Fischer, Cincinnati, Ohio, for unsecured creditors' committee.

Charles Caldwell, Asst. U.S. Trustee, Cincinnati, Ohio.

Wayne Dawson, Dayton, Ohio, for Shawmut.

### DECISION RE ADMINISTRATIVE CLAIM STATUS

BURTON PERLMAN, Chief Judge.

This matter is before the court on Andres Lumber and Supply Company's (Andres) request for allowance of its claim as an administrative expense pursuant to 11 U.S.C. Section 503. The trustee and the unsecured creditors' committee have timely objected to Andres' request. The court has jurisdiction of this matter pursuant to 28 U.S.C. Section 1334 and the General Order of Reference entered in this district. This is a core proceeding arising under 28 U.S.C. Sections 157(b)(2)(A) and (B).

The evidentiary record before us consists of a Stipulation of Facts upon which we base our following findings of fact. Andres is in the business of supplying building materials to firms in the building construction business as was this debtor. Andres had done business with the debtor prior to the time that it filed its Chapter 11 case. The Stipulation of Facts includes the following:

\*     \*     \*     \*     \*     \*

3. Within the first week following the commencement of the case, the debtor in possession approached Andres requesting that Andres supply building materials to it on 3 jobs in Dayton, Ohio known as Lots 18, 29, and 32 Brookview Farms. The material to be supplied to the 3 jobs were what is known as a framing package. Included in a framing package is the wood frames and roofing material for a house which result in the 4 walls and roof of the structure under construction.

4. This request was made by the former principal of the debtor, David Hartigan. Hartigan described the Ch. 11 filing as being necessitated by cash flow problems of the debtor. Andres was requested to supply the 3 jobs on credit it being represented to Andres by the debtor in possession that payment for the current building materials would be made within 30 days of delivery. On September 21, 1988, the post petition extension of credit was discussed in a telephone conference between John Andres, president of Andres Lumber, and Richard Nelson, attorney for the debtor in possession. Richard Nelson again described the debtor's problem as essentially one of cash flow.

\*     \*     \*     \*     \*     \*

7. On September 24, 1988 the first materials were delivered to the job sites. On October 29, 1988 the last of the materials were delivered to the job site. \* \* \* [The] exhibits reflect the dates of

delivery, the job site, and the balances due for the materials delivered and are summarized as follows:

Lot 18–Brookview Farms– $11,187.48
Lot 29–Brookview Farms– 8,223.70
Lot 32–Brookview Farms– 12,573.09

8. The materials supplied to Lots 18 and 32 were incorporated by Pioneer into buildings located on those sites. The 4 walls and roof pictured on the Trustee appraisals on Lots 18 and 32 being Exhibits D–3 and E–3, are the materials supplied by Andres on credit to the debtor pursuant to the post petition request. It is not believed that any further construction on Lots 18 and 32 has been performed. All construction activity by Pioneer ceased in November, 1988.

9. The materials delivered to the job site at Lot # 29 were never incorporated into a structure. The cessation of construction activity by the debtor after the construction of the structures at Lots 18 and 32 resulted in a situation where the materials delivered to Lot 29 were left at the job site unprotected from theft and vandalism. On November 30, 1988 Andres returned to the job site at Lot # 29 and took back what materials were still there crediting the debtor's account in the sum of $5,777.39 for the returned materials leaving a balance of $2,446.31. The materials represented by the remaining $2,446.31 balance were most likely lost due to theft and vandalism.

\*   \*   \*   \*   \*   \*

The foregoing shows the basis for Andres' claim in the amount of $26,206.88. (Value of materials delivered less credit for returned materials.)

To initiate the discussion leading to a resolution of what is before us, we refer to the pertinent statutes:

### Sec. 364. Obtaining credit.

(a) If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1304, 1203, or 1204 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

### Sec. 503. Allowance of administrative expenses.

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:

\*   \*   \*   \*   \*   \*

It is the position of Andres that the debt to it was incurred by the debtor-in-possession in the ordinary course of business, and its claim should be allowed as an administrative expense pursuant to Section 503(b)(1)(A). The central thrust of the trustee and the creditors' committee in opposing administrative claim status to the claim of Andres, is that the materials supplied by Andres did not benefit the estate.

■■ The controlling law for this controversy is by now well established:

\*   \*   \*   \*   \*   \*

"The test for whether a claim qualifies for payment as an administrative expense is set forth in *In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir.1976). In *Mammoth Mart* the court stated that a claimant must prove that the debt (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate. *Id.* at 954." *In re White Motor Corp.,* 831 F.2d 106, 110 (6th Cir.1987).

There is no dispute here that the materials supplied by Andres were supplied in a transaction with the debtor-in-possession and not the prefiling debtor. The focus here is on the second factor, whether the materials directly and substantially benefitted the estate. More specifically, the trust-

ee and the creditors' committee rely on the following facts to show that there was no benefit to the estate. Part of the Stipulation of Facts entered into by the parties establishes an appraised value for each of the three properties to which Andres supplied materials. The Stipulation in addition contains a statement of the mortgage and mechanics liens applicable to each of the properties. This evidence is intended to show that what benefit was conferred upon the properties by the materials supplied by Andres benefitted not the debtor-in-possession, but the lienholders.

We conclude that the position of the trustee and the creditors' committee with respect to what is required in order to show the requisite benefit for administrative claim purposes, is too narrow and is inconsistent with a proper interpretation of the applicable law. In support of this statement, we look to the facts in *In re United Trucking Service, Inc.*, 851 F.2d 159 (6th Cir.1988). *United Trucking* involved a Chapter 11 trailer lessee whose trailer lease was deemed rejected. The court ordered all trailers returned to the lessor. The bankruptcy case was filed in 1983, while the return of the trailers to the lessor occurred in mid–1984. Thus, for a period of time the debtor-in-possession retained and presumably operated the trailers. The lease had included a provision requiring the debtor to maintain the trailers in good condition and to make repairs at its own expense. The returned trailers were not in good condition, and the trailer lessor repaired them following their return. The bankruptcy court allowed the claim of the lessor for repair of the trailers as an administrative expense, and this conclusion was affirmed by the district court and the court of appeals.

In reaching this conclusion, the court of appeals said (851 F.2d at p. 162):

In light of the Act's purpose of enabling the continued operation of insolvent businesses, we conclude that the bankruptcy court was correct in treating TRC's post-petition damages claim as an administrative expense under Section 503. United's asserted failure to maintain and repair the trailers in accord with the lease obligation allowed United, the debtor, *to use the money saved and not paid for TRC's benefit as contemplated under the lease, to continue its operations.* This breach and misuse of TRC's trailers did benefit the bankrupt estate. Accordingly, the damages under the breached lease covenant, to the extent that they occurred post-petition, provided benefits to the bankrupt estate and were properly accorded priority under Section 503 to TRC. [Emphasis added.]

The heart of the foregoing explanation is the impact of the fund in question upon the ability of the debtor-in-possession to continue operating its business. Having distilled this essence from *United Trucking*, we apply it to the case at bar. Here there is no question that debtor's business was building construction, and there is no question that the materials supplied by Andres were intended for this purpose. There was thus "benefit to the estate" because the materials supplied by Andres enabled debtor to continue its operation.

The trustee and the creditors' committee seek to avoid this outcome by asserting that this Chapter 11 case is in a liquidating mode. This argument, however, cannot avail these parties. In its early days this Chapter 11 case appeared to have for its aim the rehabilitation of the debtor so that it might continue its construction business. The delivery of the materials here in question occurred during that time.

The trustee and the creditors' committee argue that there was no benefit to the estate because the materials supplied by Andres to the extent that they were utilized in construction, resulted in no values which could provide a distribution to unsecured creditors. This proposition is also unsound. A rule predicating administrative priority on an actual distribution to unsecured creditors of the estate would, in the long run, be detrimental to the interests of all unsecured creditors as a group. The purpose of granting administrative expense priority to certain claims "is to facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods

318

and services." *In re United Trucking Service, Inc., supra,* at 161, quoting *Mammoth Mart, supra,* at 954. Requiring as a condition of administrative claim status that a claimant's services must in fact lead to a dividend to unsecured creditors, would severely diminish the already fragile incentives for suppliers to deal with a debtor-in-possession. The court in *In re Jartran,* 732 F.2d 584 (7th Cir.1984) used language which reinforces this view (at p. 586):

> It is well settled that expenses incurred by the debtor-in-possession in *attempting* to rehabilitate the business during reorganization are within the ambit of Section 503. See *Reading Co. v. Brown,* 391 U.S. 471, 475, 88 S.Ct. 1759, 1761, 20 L.Ed.2d 751 (1968) (construing predecessor to section 503). [Emphasis added.]

> \* \* \* \* \* \*

> If a reorganization is to succeed, creditors asked to extend credit after the petition is filed must be given priority so they will be moved to furnish the necessary credit to enable the bankrupt to function.

> \* \* \* \* \* \*

Without a provision like Section 503, efforts to reorganize would be hampered by the necessity of advance payment for all goods and services supplied to the estate since presumably no creditor would willingly assume the status of a non-priority creditor to a debtor undergoing reorganization.

In light of the foregoing discussion, we conclude that the Andres claim is entitled to administrative expense status.