In re Robert SHERIDAN.

BOSP INVESTMENTS and Bomat Investments, Appellants,

v.

The OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Appellee.

No. 95 C 2980.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 11, 1995.

Janet S. Baer, Schwartz, Cooper, Greenberg & Krauss, Chicago, IL, for appellants.

Robert Newman, Wildman, Harrold, Allen & Dixon, Chicago, IL, for appellee.

### MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

In late 1994, BOSP Investments and BO-MAT Investments (collectively "BOSP") filed a request for the payment of certain administrative expenses by the bankruptcy estate of Robert Sheridan. These expenses included: (1) attorneys fees and costs awarded to BOSP and against various entities controlled by Sheridan in a lawsuit brought by Sheridan entities against BOSP; (2) management fees awarded to BOSP and against various entities controlled by Sheridan in the same suit; and (3) damages for waste and mismanagement allegedly committed by various entities controlled by Sheridan. On December 5, 1994, the bankruptcy court denied BOSP's administrative expenses request. The court reasoned that neither fundamental fairness nor the alter-ego theories advanced by BOSP provided grounds entitling BOSP to hold the Sheridan estate liable for the obligations of separate Sheridan-controlled entities.

### BACKGROUND

I. *The Agreements And The District Court Litigation*

In 1987, Edgemont Corporation, wholly owned by Sheridan, entered into a master agreement with Robert D. Burch as trustee of certain trusts. The master agreement stated that Edgemont would identify parcels of real estate for acquisition and submit them to Burch for approval. If approved by Burch, each parcel would be acquired by a newly formed limited partnership (an "owner partnership") owned fifty percent by BOSP as a limited partner. The other fifty percent was owned by another limited partnership (a "Sheridan partnership"), which acted as the general partner of the owner partnership, and which was effectively controlled by Sheridan. A separate owner partnership and partnership agreement was created and executed for each new parcel of real estate acquired, and Burch provided the funds to capitalize each owner partnership. Each property was to be managed by a management company (a "Sheridan management company") owned in whole or in part by Sheridan.

Some of the partnership agreements also contained buy-sell rights that gave BOSP the right to purchase the Sheridan partnership's interest in the owner partnerships. Pursuant to these provisions, in early 1991 BOSP elected to exercise its right to purchase the Sheridan partnerships' interests in six owner partnerships. The Sheridan partnerships, however, disputed whether BOSP exercised its buy-sell rights prematurely with respect to two of the owner partnerships, and the calculation of the purchase price for the other four owner partnerships. Consequently, on April 25, 1991, all twelve Sheridan part-

nerships filed a complaint against BOSP in the United States District Court for the Northern District of Illinois before Judge James F. Holderman. In addition, on April 26, 1991, Robert Sheridan filed his chapter 11 petition for bankruptcy.

In response, BOSP filed a third party complaint in the district court action against several of the Sheridan partnerships and management companies. BOSP sought recovery of the management and accounting fees paid by the owner partnerships to Sheridan management companies after the Sheridan partnerships refused to sell their share of the disputed owner partnerships.

After a bench trial, Judge Holderman decided in favor of BOSP on the buy-sell issues. After various motions to amend the judgment, Judge Holderman issued two subsequent awards in favor of BOSP, including attorneys fees and costs in the amount of $1,548,916.75, and management fees in the amount of $1,457,887.00. The attorneys fees and costs were awarded against the Sheridan partnerships pursuant to provisions of the disputed partnership agreements that required the losing party in any suit to enforce or interpret the agreement to pay the winning party's attorneys fees. The management fees were awarded against the Sheridan partnerships and a Sheridan management company in compensation for management fees wrongfully paid to Sheridan management companies after the Sheridan partnerships wrongfully refused to sell their shares of the disputed owner partnerships.

## II. The Bankruptcy Court

Following the district court judgment and awards, BOSP filed a "Request for Allowance and Payment of Administrative Expenses" from the bankruptcy estate of Robert Sheridan. BOSP sought administrative expenses for the district court awards against various Sheridan entities, and a claim for damages resulting from alleged waste and mismanagement by certain Sheridan controlled entities. The bankruptcy court denied BOSP's request. It reasoned that neither fundamental fairness nor the alter-ego theories advanced by BOSP provided grounds entitling BOSP to hold the Sheridan estate liable for the obligations of separate Sheridan controlled entities.

## DISCUSSION

BOSP challenges the bankruptcy court's denial of administrative expenses from the Sheridan estate. The bankruptcy court arrived at this denial as a matter of law. Thus, this court must review de novo. In re Evanston Motor Co., Inc., 735 F.2d 1029, 1031 (7th Cir.1984) (district courts must review questions of law de novo in bankruptcy appeals); Bankruptcy Rule 8013. The burden of proving entitlement to administrative expenses is on the claimant; the standard of proof is preponderance of the evidence. 11 U.S.C.A. § 503(b)(1)(A).

## I. Fundamental Fairness Doctrine

The expenses requested by BOSP— the district court awards, and the claim for damages—stem from BOSP dealings with limited liability Sheridan entities, not with Sheridan himself or with the Sheridan estate. This fact is the primary obstacle to BOSP's claim of entitlement. BOSP argues, however, that even under these circumstances it is entitled to receive administrative expenses from the Sheridan estate under the fundamental fairness doctrine of Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968) and its progeny.

In Reading, the Supreme held that tort claims resulting from the negligence of a trustee acting within the scope of his authority are entitled to administrative expense priority. Consequently, the Court granted administrative expense priority to a claimant whose building was damaged by fire as a result of a trustee's negligence. The Court reasoned that it was "natural and just" that those injured by the operation of a business during bankruptcy recover before those creditors for whose benefit the business was conducted. Id. at 482, 88 S.Ct. at 1765. In cases that have expanded the Reading rationale beyond the torts area, bankruptcy courts have also granted administrative expense priority to a wide range of claimants harmed by the wrongful actions of trustees or debtors, such as claimants who have incurred expenses defending frivolous litigation

**614**

brought against them by a trustee or a debtor. *See, for example, In re E.A. Nord Co., Inc.,* 78 B.R. 289 (Bankr.W.D.Wash.1987). Relying on these cases, BOSP argue that they represent a "theory of fairness to creditors or third parties who, as a result of acts of a debtor-in-possession, suffer injury." BOSP brief at 10. Thus, even though the administrative expenses requested by BOSP involve the liabilities of Sheridan entities with limited liability, and not Sheridan himself or the Sheridan estate, BOSP argues that because these entities were controlled by Sheridan, the *Reading* fundamental fairness doctrine justifies holding the Sheridan estate liable.

BOSP's argument is flawed, however, because the notion of fundamental fairness manifest in the *Reading* line of cases has only been used by courts to determine the priority or validity of a claim stemming directly from the actions of a debtor or a trustee. In *In re E.A. Nord,* for example, the court granted administrative expenses for attorneys fees to a party forced to defend against a frivolous suit brought by a trustee. In this case, however, BOSP has no claim stemming directly from any actions or wrongdoing by the Sheridan estate. Rather, BOSP only has a claim against various partnerships and corporations controlled by Sheridan. As a result, the *Reading* fundamental fairness doctrine has no application to this case, and cannot provide grounds for imposing an administrative expense liability on the Sheridan estate.

## II. *Alter–Ego Theory*

▮ Looking beyond the *Reading* line of cases, BOSP also argues that it is entitled to administrative expenses from the Sheridan estate on an alter-ego theory. In short, BOSP contends that the various Sheridan entities at issue are alter-egos of Sheridan himself. As a result, BOSP concludes, this court should pierce the corporate veil of these Sheridan entities and hold the Sheridan estate liable for their obligations.

▮ Illinois law generally treats a corporation as a legal entity separate and distinct from other corporations or individuals with which it may be affiliated.[1] *Van Dorn Co. v. Future Chemical and Oil Corp.,* 753 F.2d 565, 569 (7th Cir.1985); *Main Bank of Chicago v. Baker,* 86 Ill.2d 188, 56 Ill.Dec. 14, 427 N.E.2d 94 (1981). The Illinois Supreme Court has acknowledged, however, that a corporate entity will be disregarded, and its veil of limited liability pierced, when two requirements are met. First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. *Van Dorn,* 753 F.2d at 569–70. Factors that Illinois courts consider in evaluating the first prong of this test include: (1) failure to maintain adequate corporate records or comply with corporate formalities; (2) co-mingling of funds or assets; (3) under-capitalization; and (4) treatment of the assets of the corporation as if they were the individual's. *Van Dorn,* 753 F.2d at 570.

Applying these principles to this case, BOSP's alter-ego argument must fail simply because BOSP has not alleged facts sufficient to support a finding that the first prong of the Illinois alter-ego test is met. As noted by the bankruptcy court, BOSP has alleged that Sheridan controlled the many Sheridan entities at issue, and would have benefitted had they succeeded in the district court litigation. But neither of these asserted facts addresses any of the factors considered by Illinois courts in evaluating the first prong of the Illinois test.

BOSP also alleges that the Sheridan entities involved in the district court litigation were undercapitalized. This allegation at least address one of the factors considered by Illinois courts in the first prong of the alter-ego test. As noted by the bankruptcy court, however, BOSP's under-capitalization allegation is purely conclusory. BOSP has

1. Illinois law is discussed here because all but two of the relevant Sheridan entities are incorporated in Illinois, and the remaining two Sheridan entities are incorporated in Florida and Arizona.

The law of Florida and Arizona is essentially the same as in Illinois for purposes of piercing the corporate veil.

cited no authority that under-capitalization alone is sufficient to establish the necessary unity of interest and ownership under the Illinois test. In fact, some courts applying the veil piercing alter-ego test under Delaware law have expressly held that under-capitalization alone is insufficient to justify piercing the corporate veil. *See Heyman v. Beatrice Company,* 1995 WL 151872, at \*8 (N.D.Ill.). *See also Antonic Rigging & Erecting of Minnesota, Inc., v. MDCON,* 1990 WL 171795, at \*4 (N.D.Ill.). As a result, BOSP has not alleged facts sufficient to pierce the corporate veil of the Sheridan entities at issue, and therefore cannot establish an entitlement to administrative expenses from the Sheridan estate.

### *CONCLUSION*

For the foregoing reasons, the judgment of the bankruptcy court is affirmed.