# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3302

_____

| | | |
|---|---|---|
| Fieber's Dairy, Inc., a South Dakota Corporation; Donald Fieber; Michael Fieber; Thomas Fieber; Richard Fieber; Peter Fieber; Christopher Fieber, | * * * * * * | |
| Appellants, | * * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Purina Mills, Inc., a Delaware Corporation, | * * | [PUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: April 3, 2003
Filed: June 11, 2003

_____

Before MELLOY, FAGG, and SMITH, Circuit Judges.

_____

PER CURIAM.

Fieber's Dairy, Inc. and members of the Fieber family (collectively, Fieber's) appeal the district court's adverse grant of summary judgment in their diversity negligence action against Purina Mills, Inc. (Purina). We reverse and remand.

Fieber's hired a nutritionist from Purina in November 1998 to assist Fieber's with its dairy cows. Fieber's was initially pleased with Purina's results; however, in February 2000 Fieber's noticed negative changes in its herd and consulted Purina. Purina recommended no changes in the herd's rations. On March 18, Fieber's consulted an independent nutritionist who immediately changed the rations. The herd's health quickly improved. In June, Fieber's consulted a specialist who opined, in August, that the herd's health had deteriorated because Purina had changed the rations too rapidly. Fieber's Dairy filed suit against Purina in state court in October 2000.

Meanwhile, in October 1999 Purina had declared Chapter 11 bankruptcy in Delaware. Purina provided Fieber's notice of the filing in December 1999, and in January 2000, Fieber's received a "Notice of Hearing" from the bankruptcy court. Fieber's also heard of the bankruptcy by word of mouth and the media, and received a "Notice of Bar Dates." Fieber's asserted that, shortly after it learned of the bankruptcy, a Purina representative assured Mike Fieber (Fieber's Dairy's director) that the bankruptcy would not affect the dairy; Fieber's also asserted that the notice of hearing did not provide bar dates or hearing dates. The Delaware bankruptcy court confirmed Purina's reorganization plan on April 5; the plan's effective date was June 29.

After removing the action to federal court, Purina moved for summary judgment on the basis that Fieber's had not requested payment within thirty days after the effective date of the plan, as was required for "administrative claims," and thus Fieber's claim had been discharged. Fieber's responded that its claim had not been discharged, because it held an "administrative claim arising out of the ordinary course of [Purina's] business," and the plan provisions relating to such claims did not require Fieber's to file a claim with the bankruptcy court at any time.

The district court granted Purina summary judgment, concluding (1) Fieber's claims were discharged under the express language of the confirmation order and Eighth Circuit law; (2) allowing Fieber's to proceed with its claim would frustrate the bankruptcy goals of efficiency and finality, given Fieber's failure to submit any claims to the bankruptcy court during the bankruptcy proceedings; and (3) Fieber's could not circumvent the discharge order by showing its claim was an "administrative trade claim" as defined in the confirmation plan (the court assumed Fieber's was alleging it held a type of "ordinary course" claim called an "administrative trade claim"). In rejecting Fieber's "administrative trade claim" argument, the district court found inapposite Fieber's reliance upon Reading Co. v. Brown, 391 U.S. 471, 485 (1968) (damages claims arising out of negligent operation of debtor's business during bankruptcy should be treated as administrative claims), because the Reading Co. tort victims would have recovered from the debtor's insurance proceeds, whereas Purina did not carry insurance whose funds were segregated from the estate.

On appeal, Fieber's insists that its claim was an administrative trade claim, and alternatively, that denying its claim violates due process because the notice of hearing was inadequate. Purina responds that Fieber's claim was an administrative claim, but not an administrative **trade** claim, and thus the plan required Fieber's to file a request for payment within thirty days of the reorganization plan's effective date. Purina also notes that Reading Co. defined only "administrative claims." Purina contends that "administrative trade claims," for purposes of Purina's plan, was meant to encompass "ordinary vendor claims" that were necessary to carry on Purina's existing business during reorganization--not tort claims.

We review de novo the district court's grant of summary judgment. See Gebert v. Transp. Admin. Servs., 260 F.3d 909, 911 (8th Cir. 2001). The confirmation plan defines two types of claims relevant to this appeal. The first type are "administrative claims," as to which requests for payment had to be filed within thirty days after the effective date of the plan. The second type are a subset of "administrative claims"

called "administrative trade claims," as to which no such bar date applies. Because Fieber's did not file a request for payment before the bar date, it had to present evidence that its negligence action fell into the narrower category of "administrative trade claims."

The district court did not specifically determine whether Fieber's claim fell within the plan's definition of "administrative trade claim," but instead based its decision on a distinction between Reading Co. and this case that the district court found critical: the Reading Co. tort victims could recover from liability insurance whereas there was no such insurance in this case. However, we view the Supreme Court's discussion of insurance as dicta, and further, the Court never stated that lack of insurance would bar recovery. See Reading Co., 391 U.S. at 483 (noting in dicta that adequate insurance may not have been obtainable and claimants may have been able to recover only fraction of their damages; in usual case, however, damages would be within insurable limits). Thus, Reading Co. did not bar Fieber's negligence action. To the contrary, Reading Co. provides persuasive authority for Fieber's position, although it is not dispositive because it addresses only the broader category of "administrative claims." See Reading Co., 391 U.S. at 475, 483-85 (decisions suggest that tort claims are costs ordinarily incident to operating business and should be considered in general category of costs and expenses; damages from negligence of receiver are "actual and necessary costs" under 11 U.S.C. § 64a (governing payment of administrative expenses) (now codified in 11 U.S.C. §§ 503(b), 507(a)(1)).

Because Reading Co. was not dispositive, the district court should have interpreted the plan to determine whether Fieber's claim fell within the plan's definition of "administrative trade claim." While Purina likely did not intend for negligence claims to be included within the plan's definition of "administrative trade

-4-

claim," the definition can be read to encompass such claims.[1]  Thus, an ambiguity existed which precluded summary judgment, and which required the plan to be construed in light of any relevant extrinsic evidence.  See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 588 (9th Cir. 1993) (reorganization plan should be construed basically as contract); Tonelli v. United States, 60 F.3d 492, 495 (8th Cir. 1995) (where code of conduct was ambiguous, reversing summary judgment to allow consideration of relevant extrinsic evidence); see also Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923, 930 (8th Cir. 1999) (contract ambiguities are construed against drafter).  Because the district court did not construe the plan, we

---

[1]The plan defines "Administrative Trade Claim" as:
an Administrative Claim arising from or with respect to the sale of goods or rendition of services on or after the Petition Date in the ordinary course of the applicable Debtor's business, including Administrative Claims of employees for ordinary course wages, expense reimbursement and health and welfare benefits.

With regard to "administrative trade claims," the plan provides:
**Ordinary Course Liabilities**
Administrative Claims based on liabilities incurred by a debtor in the ordinary course of its business (including Administrative Trade Claims, Administrative Claims of governmental units for Taxes . . . , Administrative Claims under the Transition Services Agreement and Supplemental Transition Agreement and Administrative Claims arising from those contracts and leases of the kind described in section V.F) will be paid by the applicable Reorganized Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, without any further action by the holders of such Administrative Claims.  [Section III.A.1.c.]
. . .
Holders of Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business, including Administrative Trade Claims . . . will not be required to File or serve any requests for payment of such Administrative Claims.  Such Administrative Claims will be satisfied pursuant to Section III.A.1.c.

reverse and remand for further proceedings not inconsistent with this opinion.  We do not address Fieber's alternative due process argument.

Accordingly, we reverse.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.