COFFIN, Circuit Judge.
 

 This case raises the interesting question whether a civil compensatory fine for violation of an injunction by a debtor corporation engaged in a Chapter 11 reorganization qualifies for first priority treatment as an administrative expense under 11 U.S.C. § 503(b)(1)(A) as “actual, necessary costs and expenses of preserving the estate.”
 

 In 1976 a number of Cambridge residents and one Spunt of Brookline instituted proceedings in Middlesex Superior Court to enjoin the debtor, Charlesbank Laundry, Inc. (Charlesbank), from committing a private and public nuisance and from violating a Cambridge zoning ordinance. On June 1, 1976 a preliminary injunction issued, ordering Charlesbank to refrain from actions to the detriment of plaintiffs and others abutting the laundry. The laundry, unsuccessful in its efforts to obtain a zoning variance, continued its past practice. Plaintiff Nichols and others sought equitable relief in superior court. There was also pending the 1976 action commenced by plaintiff Spunt and others seeking both damages and injunctive relief. Shortly before both actions were scheduled to be tried, on December 11, 1980, Charlesbank filed a Chapter 11 petition. Subsequently, in August, 1982, the bankruptcy, judge vacated the automatic stay of Bankruptcy Rule 11-44 and allowed the state actions to proceed.
 

 After considerable negotiations the state actions were settled in the spring of 1983. A consent judgment, noting that one of the debtor’s buildings had been destroyed by fire and could be replaced only by a building conforming to the zoning ordinance, restricted certain activities such as parking, laundry operations, vibration, fuel use, and sidewalk and street cleaning for 180 days, after which time laundry operations were to cease. The court having taken testimony and received affidavits as to legal services and disbursements, also ordered Charlesbank to “pay to plaintiffs ... a compensatory fine assessed civilly for violation of the temporary injunction herein of $16,283.85 being $4,752.95 due for legal services and disbursements prior to December 11, 1980 (the date it filed its petition for reorganization) and the balance of $11,-530.90 for services and disbursements after that date forthwith.”
 

 The plaintiffs then sought allowance of the latter amount, $11,530.90, as a priority claim.
 
 [1]
 
 Their motion invoked various sections of 11 U.S.C. § 503: subsections (b)(3)(D) (expenses of a creditor “in making a substantial contribution”); (b)(4) (compensation for services of an attorney of an entity whose expense is allowable); (b)(3)(C) (expenses of a creditor in connection with the prosecution of a criminal offense.) We consider only what we deem to be the relevant subsection, (b)(1)(A) (“The actual, necessary costs and expenses of preserving the estate”).
 

 The bankruptcy judge denied plaintiffs’ motion, reasoning that there was “no benefit to the estate” or “contribution to the creditors” resulting from the “adversarial” efforts of plaintiffs. The district court distinguished
 
 Reading Co. v. Brown,
 
 391 U.S.
 
 *202
 
 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), on which plaintiffs principally relied, on the ground that there were “no cases equating a civil penalty for the violation of a temporary restraining order with a tort”.
 
 [2]
 
 35 B.R. 756 at 757. It also felt itself bound by “the common-law rule that attorneys’ fees do not qualify as recoverable damages in tort ... actions in the absence of specific statutory authorization” at 757.
 

 Although there seems to be no authority precisely covering the circumstances of the instant case, we think it falls within the clearly enunciated rationale of
 
 Reading Co. v. Brown.
 
 In
 
 Reading,
 
 because of the negligence of a receiver conducting the debtor’s business under Chapter 11 authority, a fire destroyed property in adjoining premises. Various fire loss claimants filed 147 claims for “administrative expenses” in a sum exceeding total assets of the estate. The estate put forward much the same argument as appellees here — that allowing first priority for negligence claims would not aid the rehabilitation of the business or preserve a maximum of assets for distribution.
 

 The Court responded by stressing one overlooked “decisive, statutory objective: fairness to all persons having claims against an insolvent.” 391 U.S. at 477, 88 S.Ct. at 1762. It then applied that principle to the case before it:
 

 “At the moment when an arrangement is sought, the debtor is insolvent. Its existing creditors hope that by partial or complete postponement of their claims they will, through successful rehabilitation, eventually recover from the debtor either in full or in larger proportion than they would in immediate bankruptcy. Hence the present petitioner did not •merely suffer injury at the hands of an insolvent business: it had an insolvent business thrust upon it by operation of law.”
 
 Id.
 
 at 478, 88 S.Ct. at 1763.
 

 Not only did the Court hold that “tort claims arising during an arrangement [are] actual and necessary expenses of the arrangement”,
 
 id.
 
 at 482, 88 S.Ct. at 1765, because it seems “more natural and just” to allow those injured by operation of a business during arrangement to “recover ahead of ... those for whose benefit the business is carried on”,
 
 id.,
 
 but it refused to distinguish, “within the class of torts committed by receivers while acting in furtherance of the business, between those ‘integral’ to the business and those that are not.”
 
 Id.
 
 at 485, 88 S.Ct. at 1767.
 

 We see no reason why the claim of plaintiffs in this case does not fall within both the letter and the spirit of
 
 Reading.
 
 The same fairness principle favors plaintiffs here, whose premises, lives, or businesses were adversely affected by Charles-bank’s continuing conduct in violation of the temporary injunction.
 
 [3]
 
 That the wrong committed by Charlesbank was a violation of an injunction issued in the course of proceedings aimed at enjoining and obtaining damages for the commission of a nuisance does not take it out of the category of a “tort”. As Prosser has written, “Nuisances are types of damage — the invasion of two quite unrelated kinds of interests [i.e., those protected by public and private nuisance], by conduct which is tortious because it falls into the usual categories of tort liability.” W. Prosser,
 
 The Law of Torts
 
 § 87 (4th ed. 1970).
 
 See also Restatement (Second) of Torts
 
 § 822 comment, and generally, Chapter 40, Nuisance (1979).
 

 
 *203
 
 That courts have found some resilience in
 
 Reading
 
 even beyond the field of torts is well illustrated by
 
 Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.,
 
 443 F.2d 867, 874 (2nd Cir.1971), in which the Second Circuit, in setting aside a temporary injunction in favor of a patentee against a debtor in a Chapter 11 proceeding, noted that the patentee, if the patent’s validity was subsequently sustained, would have a first priority claim. Summarizing the facts in
 
 Reading,
 
 Judge Friendly wrote for the court, “Damages for infringing a patent in the course of sales made for profit would seem an
 
 a fortiori
 
 case for priority.”
 
 Id.
 
 So, too, is this case an even stronger one for priority than was
 
 Reading.
 
 The debtor in this case
 
 deliberately
 
 continued a violation of law month after month presumably because it was more lucrative for the business to operate outside the zoning ordinance than within it. If fairness dictates that a tort claim based on negligence should be paid ahead of pre-reorganization claims, then,
 
 a fortiori,
 
 an intentional act which violates the law and damages others should be so treated.
 
 See also In re Mammoth Mart, Inc.,
 
 536 F.2d 950, 955 (1st Cir.1976), where we acknowledged that the
 
 Reading
 
 principle would accord first priority to a claim for compensation where a debtor-in-possession “accepts services from a third party without paying for them”; and
 
 Yorke v. NLRB,
 
 709 F.2d 1138, 1143 (7th Cir.1983), in which the court refers to
 
 Reading’s
 
 holding simply as “those injured during administration of estate by Trustee entitled to priority claim as administrative expense”.
 

 We now touch briefly on what might be considered an alternative ground for the district court’s holding — the ordinary presumption against the awarding of attorney’s fees. We think the court misper-ceived the nature of the award. Counsel fees were not added on to damages under any notion of automatic entitlement flowing from the nature of the action brought. They were, instead, the measure of the compensatory fine awarded to plaintiff. Such a measure had been agreed upon by the parties, the amount thereof being left to the informed discretion of the judge. Clearly, had the judge simply set the amount of the fine without revealing how he arrived at it, there would be no basis for challenging it here. We thus see no justifiable reason for not recognizing the award here as an administrative expense deserving of first priority treatment.
 

 The judgment is reversed.
 

 [1]
 

 . They subsequently sought to add $981.16, the cost of a property appraisal, and counsel fees in the amount of $2,218.85 covering service from the date of the consent judgment to the date of the hearing in the bankruptcy court. These items do not seem to have been presented to the district court; if so, we need not consider them.
 
 Johnston v. Holiday Inns, Inc.,
 
 595 F.2d 890, 894 (1st Cir.1979). More importantly, they do not have the status of being included as components of a state court compensatory fine.
 
 See infra.
 
 We accordingly do not consider these items.
 

 [2]
 

 . In
 
 Reading,
 
 the Court construed § 64(a)(1) of the former Bankruptcy Act, 11 U.S.C. § 104(a)(1). That provision is the predecessor to what is now 11 U.S.C. § 503(b).
 

 [3]
 

 . Although the injunction itself was not included in the record, a copy of the "Consent Final Judgment” reciting the violation of the injunction was included and no issue is raised as to the fact of its existence. Appellees argue that no damages were found to be due plaintiffs and that there were no findings of a public or private nuisance. Since the explicit basis for the award of compensation was violation of the temporary injunction, there was no occasion to adjudicate the merits of the underlying action. It would be ironic if a debtor by flouting a court order could sidestep the claims of plaintiffs who would otherwise be entitled to payment had the issue been fully litigated on the merits.