United States Court of Appeals
For the First Circuit For the First Circuit



No. 96-2371

CUMBERLAND FARMS, INC.,

Appellant,

v.

FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge] 



Before

Torruella, Chief Circuit Judge, 

Bownes, Senior Circuit Judge, 

and Stahl, Circuit Judge. 



Barbara D. Gilmore with whom Sullivan & Worcester LLP and Mark G. 
Howard were on brief for appellant. 
Jonathan H. Alden, Assistant General Counsel, Florida Department 
of Environmental Protection for appellee.



June 19, 1997


BOWNES, Senior Circuit Judge. This is an appeal BOWNES, Senior Circuit Judge. 

from the judgment of the district court affirming the summary

judgment of the bankruptcy court imposing a fine against

debtor-appellant Cumberland Farms, Inc., for failure to

follow Florida laws and regulations covering the maintenance

of petroleum underground storage tanks (USTs). Cumberland

was a debtor-in-possession in a Chapter 11 reorganization

proceeding. The district court also affirmed the ruling of

the bankruptcy court that the fine be given administrative

expense priority status. Cumberland appeals the

imposition of the fine, the amount of the fine, and its

designation as a priority administrative expense. The

appellee is the Florida Department of Environmental

Protection (FDEP). It is the regulatory agency in charge of

administering certain Florida environmental statutes

including the maintenance of USTs for petroleum and petroleum

products.

Standard of Review Standard of Review 

Our review, as was that of the district court, is

de novo. In re Varrasso, 37 F.3d 760, 762-63 (1st Cir. 

1994). Federal Rule of Bankruptcy 7056, governing summary

judgment in the bankruptcy court incorporates Rule 56 of the

Federal Rules of Civil Procedure.1

 

1. Fed. R. Civ. P. 56(c) provides that summary judgment
"shall be rendered forthwith if the pleadings, depositions,
answers to interrogatories, and admissions on file, together

-2- 2

Cumberland does not claim that summary judgment was

inappropriate. Its brief attacks the findings and rulings of

the district and bankruptcy courts. The relief sought is not

a new hearing but summary judgment in its favor. We affirm

the judgment of the district court.

The Facts The Facts 

Cumberland owned and operated a network of

approximately 134 combined convenience stores and gasoline

stations in Florida. Each store-station had one or more

USTs. There was an average of three tanks per location. On

May 1, 1992, Cumberland filed a voluntary petition in

bankruptcy under Chapter 11 of the Bankruptcy Code.

Under ch. 376.309 of the Florida Statutes, each

owner of a UST location must "establish and maintain evidence

of financial responsibility." Rule 62-761.480 of Florida's

Administrative Code requires that an owner of a UST site

shall demonstrate "the ability to pay for faulty cleanup and

third party liability resulting from a discharge at the

facility" in accord with the Code of Federal Regulations

(C.F.R.), Title 40, Part 280, Subpart H. This C.F.R. allows

a UST owner to establish financial responsibility by

obtaining insurance or satisfying a self-insurance standard.

 

with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law." It is axiomatic
that the materials must be considered in the light most
favorable to the non-moving party.

-3- 3

To meet the self-insurance requirements, documents must be

filed within 120 days of the end of the fiscal year of the

UST owner. Satisfaction of financial responsibility is a

prerequisite for enrollment in the Florida Petroleum

Liability and Restoration Insurance Program (PLIRP). Fla.

Stat. ch. 376.3072 (1996).

Cumberland operated its UST sites from February 1,

1992 through August 27, 1993 without meeting the financial

reporting requirements of Florida laws and pertinent

regulations. Effective August 27, 1993, Cumberland obtained

insurance to satisfy Florida's financial responsibility

requirements. Cumberland was, therefore, in violation of

Florida's financial responsibility law and regulations during

the bankruptcy period of May 1, 1992 to August 27, 1993.

Florida law also incorporates 40 C.F.R. 280.110(a)

into its UST regulatory regimen. Section 280.110(a) mandates

that a UST owner notify the regulatory agency within ten days

of the filing of a voluntary or involuntary Chapter 11

proceeding. Cumberland failed to notify the FDEP within the

ten-day period of its Chapter 11 filing.

Florida law provides for the imposition of a civil

penalty of up to $10,000 per offense for each day of

violation for each violation of Florida laws and FDEP

regulations. Fla. Stat. ch. 403.161 and 403.141 (1995). 

-4- 4

The FDEP brought an application on September 1,

1993 in the bankruptcy court for an Allowance of an

Administrative Expense Claim in the amount of $200,000 for

the bankruptcy period of May 2 to August 27, 1993. This was

the civil penalty that FDEP asked the bankruptcy court to

impose on Cumberland. The FDEP moved for summary judgment on

its application. A hearing was held on the motion for

summary judgment on May 23, 1996. The bankruptcy court

granted the FDEP's motion for summary judgment, imposed a

penalty of $200,000 and ruled that the claim would be given

priority as an administrative expense. Cumberland appealed

to the district court, which affirmed the bankruptcy court.

The case is now before us on Cumberland's appeal from the

district court.

Cumberland makes three arguments on appeal. We

treat them seriatim, quoting them as stated in Cumberland's

brief.

I. THE BANKRUPTCY COURT WRONGLY
CONCLUDED CUMBERLAND WAS NOT IN
COMPLIANCE WITH PLIRP DURING THE DISPUTED
PERIOD.

As part of this argument Cumberland maintains that

it was in "substantial compliance" with PLIRP. It also

asserts that its failure to file an affidavit of financial

responsibility "should be deemed waived."

There can be no doubt that Florida law gives the

FDEP the authority to establish rules and regulate the

-5- 5

operations of USTs in Florida. Fla. Stat. ch. 376.303

(1995). Under chapter 403.141 and .161 of the Florida

Statutes, failure to comply with any rule, regulation, order,

or permit issued by the FDEP is a violation of the law.

Cumberland does not deny that it failed to file the requisite

financial responsibility information when due. It argues

that on February 1, 1992, which was pre-bankruptcy, the law

making a UST owner eligible for enrollment in PLIRP required

only "substantial compliance." Cumberland asserts that it

was in substantial compliance. 

We agree with the district court that enrollment in

the PLIRP during the disputed period is not an issue. We

note, as did the district court, that the bankruptcy court

made no findings as to Cumberland's eligibility under PLIRP.

The FDEP brought its claim for penalties under the statutory

and regulatory provisions of Florida law. The PLIRP is not

implicated. Violation of the PLIRP results only in exclusion

from the insurance program, not in regulatory penalties. The

bankruptcy court, therefore, was not the proper forum to

determine Cumberland's PLIRP status.

We find no basis for holding that Cumberland's

failure to file an affidavit of financial responsibility

should be deemed waived. Cumberland's argument seems to be

that the gravamen of the financial responsibility test is

that the owner or operator of a UST facility have a net worth

-6- 6

of $10 million; that Cumberland at all times had a net worth

of at least $10.2 million and that, therefore, the filing of

the financial reports should be "deemed waived." We

disagree. The gravamen of the offense is not the net worth 

of the UST owner, but the timely filing by such owner of the

required financial reports. Cumberland failed to do so

despite its knowledge of the legal requirements. And such

failure cannot be excused or condoned on the basis of an

affidavit filed by a corporate official (Arthur C.G.K.

Koumantzelis) on February 15, 1994, which itself fails to

meet the reporting requirements. 

II. UNDER THE GRACE PERIOD FOR FILING
FINANCIAL RESPONSIBILITY AFFIDAVITS, THE
DEP COULD NOT DENY CUMBERLAND COVERAGE
UNDER PLIRP UNTIL AFTER CUMBERLAND FILED
ITS BANKRUPTCY PETITION.

This is a variation of the PLIRP eligibility

argument already made and answered. We reject it for the

same reasons.

III. EVEN IF CUMBERLAND WAS NOT ENROLLED
IN PLIRP DURING THE DISPUTED PERIOD, THE
BANKRUPTCY COURT ABUSED ITS DISCRETION IN
GIVING AN AWARD OF PUNITIVE DAMAGES AS AN
ADMINISTRATIVE EXPENSE CLAIM.

Cumberland first argues that the FDEP lacks

authority to impose civil penalties. The short answer to

this contention is that the FDEP did not impose the penalty,

the bankruptcy court did. Under Florida law the penalty must

be judicially imposed. Cumberland argues that the DEP never

-7- 7

sought to impose such penalties in any Florida court. This

ignores two things: There is no Florida requirement that the

penalty sought be imposed by a Florida state court, and the

bankruptcy court was the proper forum for the DEP to seek

imposition of the penalty sought.

It is by now abundantly clear that in state-

regulated areas such as protection of the environment, a

bankruptcy court must comply with the laws of the state

involved. In re Virginia Builders, Inc., 153 B.R. 729, 735 

(E.D. Va. 1993). Debtors in possession, such as Cumberland,

do not have carte blanche to ignore state and local laws

protecting the environment against pollution. Midlantic 

Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 

494, 505 (1986).

Cumberland next challenges the amount of the

penalty. The assessment of the sum of $200,000 by the

bankruptcy court is a finding of fact reviewed against the

clearly erroneous test. We note first that the $200,000

penalty is considerably less than the maximum of $647 million

that could have been assessed. Cumberland's failure to file

was either willful or grossly negligent. It has never

submitted the documents required under Florida law.

Moreover, Cumberland did not notify the FDEP, as was

required, that it had filed a voluntary petition under

Chapter 11 of the bankruptcy code. We have read the record

-8- 8

carefully and can find no compelling basis for reducing the

$200,000 penalty.

The final issue is whether the bankruptcy court

erred in giving the fine administrative expense status.

Both the district and bankruptcy courts found In re 

Charlesbank Laundry, Inc., 755 F.2d 200, 203 (1st Cir. 1985) 

controlling. Before we discuss Charlesbank, however, we must 

first examine Reading Co. v. Brown, 391 U.S. 471 (1968) 

because Reading was themainstay of the opinion inCharlesbank. 

In Reading the negligence of a receiver conducting 

debtor's business under Chapter 11 of the Bankruptcy Act

resulted in a fire that totally destroyed a building that was

debtor's only significant asset. The fire spread to

adjoining premises and destroyed real and personal property

belonging to petitioner Reading. Id. at 473. The issue as 

stated by the Court was, "whether the negligence of a

receiver administering an estate under a Chapter XI

arrangement gives rise to an 'actual and necessary cost' of

operating the debtor's business." Id. at 476. In rejecting 

the position of the trustee that no negligence claims should

receive priority, the Court stated:

In our view the trustee has overlooked
one important, and here decisive,
statutory objective: fairness to all
persons having claims against an
insolvent. Petitioner suffered grave
financial injury from what is here agreed
to have been the negligence of the
receiver and a workman.

-9- 9

Id. at 477. The Court also stated, 

Although there appear to be no cases
dealing with tort claims arising during
Chapter XI proceedings, decisions in
analogous cases suggest that "actual and
necessary costs" should include costs
ordinarily incident to operation of a
business, and not be limited to costs
without which rehabilitation would be
impossible.

Id. at 483. 

We think this last observation is pertinent to the

case at bar. The payment of a fine for failing, during

bankruptcy, to meet the requirements of Florida environmental

protection laws is a cost "ordinarily incident to operation

of a business" in light of today's extensive environmental

regulations.

The question in Charlesbank Laundry was "whether a 

civil compensatory fine for violation of an injunction by a

debtor corporation engaged in a Chapter 11 reorganization

qualifies for first priority treatment as an administrative

expense . . . ." 755 F.2d at 201. A state preliminary

injunction had been issued against Charlesbank Laundry

prohibiting it from committing a public and private nuisance

and from violating a zoning ordinance. The laundry continued

its past practices undeterred. Shortly before a hearing on

the merits Charlesbank Laundry filed a Chapter 11 petition in

bankruptcy. The state court actions were ultimately settled.

Charlesbank was ordered to pay a compensatory fine assessed

-10- 10

civilly for violation of the temporary injunction.

Plaintiffs sought allowance of the amount incurred after the

bankruptcy filing ($11,000) as a priority claim. The

bankruptcy court rejected the priority claim and the district

court affirmed.

With Reading as the lodestone, we reversed, 

stating: "We see no reason why the claim of plaintiffs in

this case does not fall within both the letter and the spirit

of Reading." 755 F.2d at 202. We think the last paragraph 

of Charlesbank Laundry is pertinent to the $200,000 penalty 

imposed in the case before us:

We now touch briefly on what might
be considered an alternative ground for
the district court's holding--the
ordinary presumption against the awarding
of attorney's fees. We think the court
misperceived the nature of the award.
Counsel fees were not added on to damages
under any notion of automatic entitlement
flowing from the nature of the action
brought. They were, instead, the measure
of the compensatory fine awarded to
plaintiff. Such a measure had been
agreed upon by the parties, the amount
thereof being left to the informed
discretion of the judge. Clearly, had
the judge simply set the amount of the
fine without revealing how he arrived at
it, there would be no basis for
challenging it here. We thus see no
justifiable reason for not recognizing
the award here as an administrative
expense deserving of first priority
treatment.

755 F.2d at 203. This means, at the least, that a penalty

can be given priority status.

-11- 11

In In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st 

Cir. 1976), we noted that priority status could be given to

claims of creditors "injured by the debtor-in-possession's

operation of the business even though their claims did not

arise from transactions that were necessary to preserve or

rehabilitate the estate." We cited to Reading as authority 

for this statement. In In re Hemingway Transport, Inc., 954 

F.2d 1 (1st Cir. 1992), we made a general survey of First

Circuit law on priority claims. We first noted that, "The

traditional presumption favoring ratable distribution among

all holders of unsecured claims counsels strict construction

of the Bankruptcy Code provisions governing requests for

priority payment of administrative expenses." Id. at 4-5. 

We then stated:

As a general rule, a request for
priority payment of an administrative
expense pursuant to Bankruptcy Code 
503(a) may qualify if (1) the right to
payment arose from a postpetition
transaction with the debtor estate,
rather than from a prepetition
transaction with the debtor, and (2) the
consideration supporting the right to
payment was beneficial to the estate of
the debtor.

Id. This was followed by the observation: 

We have recognized a special
category of expense entitled to
administrative priority status, based on
considerations of fundamental fairness,
see Reading Co., 391 U.S. at 477, 88 
S.Ct. at 1763, consisting of amounts due
entities "injured by the debtor-in-
possession's operation of the business

-12- 12

even though their claims did not arise
from transactions that were necessary to
preserve or rehabilitate the estate." In 
re Mammoth Mart, 536 F.2d at 954. 

Id. We then analyzed Reading and Charlesbank Laundry. We 

held that the "request for allowance of an administrative

expense priority is not within the ambit of either Reading or 

Charlesbank . . . ." Id. at 6. We ended this section of the 

opinion stating: "We are aware of no authority that the

Reading-Charlesbank exception encompasses a right to payment 

originating in a prepetition contract with the debtor." Id. 

at 7 (footnote omitted).

We hold that the present case does come within the

ambit of Reading and Charlesbank. This was a postpetition 

claim incurred during the operation of Cumberland Farms'

business while it was operating under Chapter 11. We think

it would be fundamentally unfair to allow Cumberland Farms to

flout Florida's environmental protection laws and escape

paying a penalty for such behavior.

The judgment of the district court is affirmed. affirmed 

-13- 13