USCA1 Opinion

 

 United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 96-2371 CUMBERLAND FARMS, INC., Appellant, v. FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Circuit Judge, ___________________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Barbara D. Gilmore with whom Sullivan & Worcester LLP and Mark G. __________________ _________________________ _______ Howard were on brief for appellant. ______ Jonathan H. Alden, Assistant General Counsel, Florida Department __________________ of Environmental Protection for appellee. ____________________ June 19, 1997 ____________________ BOWNES, Senior Circuit Judge. This is an appeal BOWNES, Senior Circuit Judge. _____________________ from the judgment of the district court affirming the summary judgment of the bankruptcy court imposing a fine against debtor-appellant Cumberland Farms, Inc., for failure to follow Florida laws and regulations covering the maintenance of petroleum underground storage tanks (USTs). Cumberland was a debtor-in-possession in a Chapter 11 reorganization proceeding. The district court also affirmed the ruling of the bankruptcy court that the fine be given administrative expense priority status. Cumberland appeals the imposition of the fine, the amount of the fine, and its designation as a priority administrative expense. The appellee is the Florida Department of Environmental Protection (FDEP). It is the regulatory agency in charge of administering certain Florida environmental statutes including the maintenance of USTs for petroleum and petroleum products. Standard of Review Standard of Review __________________ Our review, as was that of the district court, is de novo. In re Varrasso, 37 F.3d 760, 762-63 (1st Cir. __ ____ _______________ 1994). Federal Rule of Bankruptcy 7056, governing summary judgment in the bankruptcy court incorporates Rule 56 of the Federal Rules of Civil Procedure.1  ____________________ 1. Fed. R. Civ. P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together -2- 2 Cumberland does not claim that summary judgment was inappropriate. Its brief attacks the findings and rulings of the district and bankruptcy courts. The relief sought is not a new hearing but summary judgment in its favor. We affirm the judgment of the district court. The Facts The Facts _________ Cumberland owned and operated a network of approximately 134 combined convenience stores and gasoline stations in Florida. Each store-station had one or more USTs. There was an average of three tanks per location. On May 1, 1992, Cumberland filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code. Under ch. 376.309 of the Florida Statutes, each owner of a UST location must "establish and maintain evidence of financial responsibility." Rule 62-761.480 of Florida's Administrative Code requires that an owner of a UST site shall demonstrate "the ability to pay for faulty cleanup and third party liability resulting from a discharge at the facility" in accord with the Code of Federal Regulations (C.F.R.), Title 40, Part 280, Subpart H. This C.F.R. allows a UST owner to establish financial responsibility by obtaining insurance or satisfying a self-insurance standard.  ____________________ with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is axiomatic that the materials must be considered in the light most favorable to the non-moving party. -3- 3 To meet the self-insurance requirements, documents must be filed within 120 days of the end of the fiscal year of the UST owner. Satisfaction of financial responsibility is a prerequisite for enrollment in the Florida Petroleum Liability and Restoration Insurance Program (PLIRP). Fla. Stat. ch. 376.3072 (1996). Cumberland operated its UST sites from February 1, 1992 through August 27, 1993 without meeting the financial reporting requirements of Florida laws and pertinent regulations. Effective August 27, 1993, Cumberland obtained insurance to satisfy Florida's financial responsibility requirements. Cumberland was, therefore, in violation of Florida's financial responsibility law and regulations during the bankruptcy period of May 1, 1992 to August 27, 1993. Florida law also incorporates 40 C.F.R. 280.110(a) into its UST regulatory regimen. Section 280.110(a) mandates that a UST owner notify the regulatory agency within ten days of the filing of a voluntary or involuntary Chapter 11 proceeding. Cumberland failed to notify the FDEP within the ten-day period of its Chapter 11 filing. Florida law provides for the imposition of a civil penalty of up to $10,000 per offense for each day of violation for each violation of Florida laws and FDEP regulations. Fla. Stat. ch. 403.161 and 403.141 (1995).  -4- 4 The FDEP brought an application on September 1, 1993 in the bankruptcy court for an Allowance of an Administrative Expense Claim in the amount of $200,000 for the bankruptcy period of May 2 to August 27, 1993. This was the civil penalty that FDEP asked the bankruptcy court to impose on Cumberland. The FDEP moved for summary judgment on its application. A hearing was held on the motion for summary judgment on May 23, 1996. The bankruptcy court granted the FDEP's motion for summary judgment, imposed a penalty of $200,000 and ruled that the claim would be given priority as an administrative expense. Cumberland appealed to the district court, which affirmed the bankruptcy court. The case is now before us on Cumberland's appeal from the district court. Cumberland makes three arguments on appeal. We treat them seriatim, quoting them as stated in Cumberland's brief. I. THE BANKRUPTCY COURT WRONGLY CONCLUDED CUMBERLAND WAS NOT IN COMPLIANCE WITH PLIRP DURING THE DISPUTED PERIOD. As part of this argument Cumberland maintains that it was in "substantial compliance" with PLIRP. It also asserts that its failure to file an affidavit of financial responsibility "should be deemed waived." There can be no doubt that Florida law gives the FDEP the authority to establish rules and regulate the -5- 5 operations of USTs in Florida. Fla. Stat. ch. 376.303 (1995). Under chapter 403.141 and .161 of the Florida Statutes, failure to comply with any rule, regulation, order, or permit issued by the FDEP is a violation of the law. Cumberland does not deny that it failed to file the requisite financial responsibility information when due. It argues that on February 1, 1992, which was pre-bankruptcy, the law making a UST owner eligible for enrollment in PLIRP required only "substantial compliance." Cumberland asserts that it was in substantial compliance.  We agree with the district court that enrollment in the PLIRP during the disputed period is not an issue. We note, as did the district court, that the bankruptcy court made no findings as to Cumberland's eligibility under PLIRP. The FDEP brought its claim for penalties under the statutory and regulatory provisions of Florida law. The PLIRP is not implicated. Violation of the PLIRP results only in exclusion from the insurance program, not in regulatory penalties. The bankruptcy court, therefore, was not the proper forum to determine Cumberland's PLIRP status. We find no basis for holding that Cumberland's failure to file an affidavit of financial responsibility should be deemed waived. Cumberland's argument seems to be that the gravamen of the financial responsibility test is that the owner or operator of a UST facility have a net worth -6- 6 of $10 million; that Cumberland at all times had a net worth of at least $10.2 million and that, therefore, the filing of the financial reports should be "deemed waived." We disagree. The gravamen of the offense is not the net worth ___ of the UST owner, but the timely filing by such owner of the required financial reports. Cumberland failed to do so despite its knowledge of the legal requirements. And such failure cannot be excused or condoned on the basis of an affidavit filed by a corporate official (Arthur C.G.K. Koumantzelis) on February 15, 1994, which itself fails to meet the reporting requirements.  II. UNDER THE GRACE PERIOD FOR FILING FINANCIAL RESPONSIBILITY AFFIDAVITS, THE DEP COULD NOT DENY CUMBERLAND COVERAGE UNDER PLIRP UNTIL AFTER CUMBERLAND FILED ITS BANKRUPTCY PETITION. This is a variation of the PLIRP eligibility argument already made and answered. We reject it for the same reasons. III. EVEN IF CUMBERLAND WAS NOT ENROLLED IN PLIRP DURING THE DISPUTED PERIOD, THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN GIVING AN AWARD OF PUNITIVE DAMAGES AS AN ADMINISTRATIVE EXPENSE CLAIM. Cumberland first argues that the FDEP lacks authority to impose civil penalties. The short answer to this contention is that the FDEP did not impose the penalty, the bankruptcy court did. Under Florida law the penalty must be judicially imposed. Cumberland argues that the DEP never -7- 7 sought to impose such penalties in any Florida court. This ignores two things: There is no Florida requirement that the penalty sought be imposed by a Florida state court, and the bankruptcy court was the proper forum for the DEP to seek imposition of the penalty sought. It is by now abundantly clear that in state- regulated areas such as protection of the environment, a bankruptcy court must comply with the laws of the state involved. In re Virginia Builders, Inc., 153 B.R. 729, 735 ______________________________ (E.D. Va. 1993). Debtors in possession, such as Cumberland, do not have carte blanche to ignore state and local laws protecting the environment against pollution. Midlantic _________ Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. ___________________________________________________ 494, 505 (1986). Cumberland next challenges the amount of the penalty. The assessment of the sum of $200,000 by the bankruptcy court is a finding of fact reviewed against the clearly erroneous test. We note first that the $200,000 penalty is considerably less than the maximum of $647 million that could have been assessed. Cumberland's failure to file was either willful or grossly negligent. It has never submitted the documents required under Florida law. Moreover, Cumberland did not notify the FDEP, as was required, that it had filed a voluntary petition under Chapter 11 of the bankruptcy code. We have read the record -8- 8 carefully and can find no compelling basis for reducing the $200,000 penalty. The final issue is whether the bankruptcy court erred in giving the fine administrative expense status. Both the district and bankruptcy courts found In re _____ Charlesbank Laundry, Inc., 755 F.2d 200, 203 (1st Cir. 1985) _________________________ controlling. Before we discuss Charlesbank, however, we must ___________ first examine Reading Co. v. Brown, 391 U.S. 471 (1968) ______________________ because Reading was themainstay of the opinion inCharlesbank. _______ ___________ In Reading the negligence of a receiver conducting _______ debtor's business under Chapter 11 of the Bankruptcy Act resulted in a fire that totally destroyed a building that was debtor's only significant asset. The fire spread to adjoining premises and destroyed real and personal property belonging to petitioner Reading. Id. at 473. The issue as ___ stated by the Court was, "whether the negligence of a receiver administering an estate under a Chapter XI arrangement gives rise to an 'actual and necessary cost' of operating the debtor's business." Id. at 476. In rejecting ___ the position of the trustee that no negligence claims should receive priority, the Court stated: In our view the trustee has overlooked one important, and here decisive, statutory objective: fairness to all persons having claims against an insolvent. Petitioner suffered grave financial injury from what is here agreed to have been the negligence of the receiver and a workman. -9- 9 Id. at 477. The Court also stated, ___ Although there appear to be no cases dealing with tort claims arising during Chapter XI proceedings, decisions in analogous cases suggest that "actual and necessary costs" should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible. Id. at 483. ___ We think this last observation is pertinent to the case at bar. The payment of a fine for failing, during bankruptcy, to meet the requirements of Florida environmental protection laws is a cost "ordinarily incident to operation of a business" in light of today's extensive environmental regulations. The question in Charlesbank Laundry was "whether a ____________________ civil compensatory fine for violation of an injunction by a debtor corporation engaged in a Chapter 11 reorganization qualifies for first priority treatment as an administrative expense . . . ." 755 F.2d at 201. A state preliminary injunction had been issued against Charlesbank Laundry prohibiting it from committing a public and private nuisance and from violating a zoning ordinance. The laundry continued its past practices undeterred. Shortly before a hearing on the merits Charlesbank Laundry filed a Chapter 11 petition in bankruptcy. The state court actions were ultimately settled. Charlesbank was ordered to pay a compensatory fine assessed -10- 10 civilly for violation of the temporary injunction. Plaintiffs sought allowance of the amount incurred after the bankruptcy filing ($11,000) as a priority claim. The bankruptcy court rejected the priority claim and the district court affirmed. With Reading as the lodestone, we reversed, _______ stating: "We see no reason why the claim of plaintiffs in this case does not fall within both the letter and the spirit of Reading." 755 F.2d at 202. We think the last paragraph _______ of Charlesbank Laundry is pertinent to the $200,000 penalty ____________________ imposed in the case before us: We now touch briefly on what might be considered an alternative ground for the district court's holding--the ordinary presumption against the awarding of attorney's fees. We think the court misperceived the nature of the award. Counsel fees were not added on to damages under any notion of automatic entitlement flowing from the nature of the action brought. They were, instead, the measure of the compensatory fine awarded to plaintiff. Such a measure had been agreed upon by the parties, the amount thereof being left to the informed discretion of the judge. Clearly, had the judge simply set the amount of the fine without revealing how he arrived at it, there would be no basis for challenging it here. We thus see no justifiable reason for not recognizing the award here as an administrative expense deserving of first priority treatment. 755 F.2d at 203. This means, at the least, that a penalty can be given priority status. -11- 11 In In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st ________________________ Cir. 1976), we noted that priority status could be given to claims of creditors "injured by the debtor-in-possession's operation of the business even though their claims did not arise from transactions that were necessary to preserve or rehabilitate the estate." We cited to Reading as authority _______ for this statement. In In re Hemingway Transport, Inc., 954 _______________________________ F.2d 1 (1st Cir. 1992), we made a general survey of First Circuit law on priority claims. We first noted that, "The traditional presumption favoring ratable distribution among all holders of unsecured claims counsels strict construction of the Bankruptcy Code provisions governing requests for priority payment of administrative expenses." Id. at 4-5. ___ We then stated: As a general rule, a request for priority payment of an administrative expense pursuant to Bankruptcy Code  503(a) may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor. Id. This was followed by the observation: ___ We have recognized a special category of expense entitled to administrative priority status, based on considerations of fundamental fairness, see Reading Co., 391 U.S. at 477, 88 ___ ___________ S.Ct. at 1763, consisting of amounts due entities "injured by the debtor-in- possession's operation of the business -12- 12 even though their claims did not arise from transactions that were necessary to preserve or rehabilitate the estate." In __ re Mammoth Mart, 536 F.2d at 954. _______________ Id. We then analyzed Reading and Charlesbank Laundry. We ___ _______ ____________________ held that the "request for allowance of an administrative expense priority is not within the ambit of either Reading or _______ Charlesbank . . . ." Id. at 6. We ended this section of the ___________ ___ opinion stating: "We are aware of no authority that the Reading-Charlesbank exception encompasses a right to payment ___________________ originating in a prepetition contract with the debtor." Id. ___ at 7 (footnote omitted). We hold that the present case does come within the ambit of Reading and Charlesbank. This was a postpetition _______ ___________ claim incurred during the operation of Cumberland Farms' business while it was operating under Chapter 11. We think it would be fundamentally unfair to allow Cumberland Farms to flout Florida's environmental protection laws and escape paying a penalty for such behavior. The judgment of the district court is affirmed. affirmed ________ -13- 13